The next case on the calendar this morning is United States v. Valerio, No. 17-2371. Good morning. Good morning. My name is Louis Freeman, and I represent Mr. Joseph Valerio. Are you ready to hear the argument? Yes, we are, sir. Thank you. Please proceed. Mr. Valerio's sentence is a life sentence. It is, in essence, a life without parole sentence. The judge gave little or no consideration to other 3553A factors besides dangerousness. The judge was concerned about dangerousness. He focused on dangerousness to the exclusion of other important factors. It has been said by this Court that it is appropriate to look at the weight that a judge gave to each factor and to determine whether that was an appropriate weight to be given to that particular factor. What factors the judge did not give sufficient weight to are rehabilitation, including the statistical reality that sex offenders are no more likely to recidivate than other offenders. Judge Bianco specifically found that he did not think that Mr. Valerio was likely to rehabilitate, didn't he? I mean, we can argue— Yes. We can certainly hear you as to why that may have been wrong, but he didn't fail to consider it. He decided it adversely. He decided it adversely, and I thought I was clear, and I'll try to be even clearer, by saying we disagree with the weight that he gave that particular factor. He did consider the factor of— Rehabilitation. Rehabilitation. However, the judge, with all due respect to Judge Bianco, is not an expert, did not consider statistics, did not consider the reality of the studies that have been shown that sex offender treatment works and that the sex offender treatment in the Bureau of Prisons is perhaps the best treatment program in the Bureau of Prisons and that it works. It also is true that people age out of crime, and the statistics are clear that as a person, an offender who's incarcerated, gets older, he also is less likely to recidivate when he gets out. Now, Judge Bianco— Making that point across crimes or specifically with respect to these kind of sex offender crimes because most of the statistics that have been cited to the Court have been across the crime spectrum and particularly with respect to young violent crimes. I'm putting the two— Young people committing violent crimes. I'm trying to juxtapose two sets of statistics. The statistic that I referred to that you just asked me about is across crimes. However, there is statistical evidence that sex offenders recidivate no more and in some cases less than other offenders. And I'm trying to—putting those two side by side and asking you to consider them both at the same time. Yes? You've made some double jeopardy arguments. I wonder if you could turn to those. In particular, the overlap, you argue, between Section 2251A and 2251C. Yes, Your Honor. A preliminary question is did you raise this in the district court or are you raising it for the first time here? I was not trial counsel. I'm sorry. That's okay. But whoever—was it raised in the trial court? Double jeopardy was raised. But not between these two? I don't believe that double jeopardy was raised between Count 5 and Count 15. I'm talking about—I think we're talking about 2 and 3 now, aren't we? Yes. The exploitation is Count 2 and there's an exploitation in Count 3. And it is our argument that this is—may have not been preserved as well as it could have, but it is plain error. So that would apply even if it wasn't raised at all rather than as well as it could have? Correct. With respect to the factors that Judge Bianco did not adequately— Before you leave 2 and 3— Yes. I think the government's argument is that each requires a separate element and therefore satisfies the Blockburger test. So why don't you tell us why you don't think that's the case? Because they are essentially the same crime. Well, they involve—in this case, the same facts support them. But if I understand the argument, it's subsection C requires that they're kind of outside the United States and A requires the defendant to know that pornography was produced using the material that's the actual subject and then transported via interstate commerce. Why don't you think that allows prosecution on both theories? I just want to make sure I understand the defense response to that argument by the government. The defense response is, as you just indicated, that the facts supporting the two charges are the same. The elements are— It's enough to show double jeopardy where the element is required in one but not the other and vice versa. But it's the way that Mr. Valerio was prosecuted for essentially the same crimes with the same elements. The fact that one—he was not prosecuted based on the fact that his particular prosecution was not based on the fact that he was outside the United States. It was inside the United States. What indication do you see that Congress intended them or did not intend them to be treated as different crimes? In certain circumstances, other than Mr. Valerio's, there could be prosecution under different theories for different crimes, if I understand your question. I'm asking—part of what we look for, I think, in assessing double jeopardy in addition to the Blockberger test is whether Congress was envisioning that these should be treated as separate crimes. Or, you know, in this case, there's some suggestion that the development of the statute suggests that there was a jurisdictional concern, but that the same acts were intended to be encompassed. It's just that there had been some ambiguity about overseas action and whether that was properly prosecutable under 2251a. That—Mr. Valerio's co-defendant is being prosecuted here in the United States for child pornography that occurred in the Ukraine. And he's charged with having solicited it. And the jury was charged that to find him guilty of the A count, they had to find that the criminal conduct, at least in part, occurred outside the United States, right? Correct. That was no requirement for the C conviction, right? That's correct. Okay. But the C count required that the depiction of pornography then be transported in interstate commerce. The government says that was no part of the A count. Is that—do you dispute that? Your Honor, I make the point that Mr. Valerio, both in terms of the way the government prosecuted him, the way the government opened, the way the government closed, was essentially the same theory, the same facts, the same crime. However, I understand your point. Okay. I just wanted to be sure I understood your argument. You were then going to tell us about the other factors that Judge Bianco failed to consider? Yes. Or failed to give appropriate weight to? Yes. As I said when I began, this is a life sentence. Mr. Valerio is now 53 years old. The judge could and should have considered the life expectancy of a man that age. And it is, as recently as yesterday, 79.4 years of age. Now, you also, when you're in prison, your life expectancy drops approximately by five years to— What was the sentence? 60 years. So there was no question under. How could he not know that that was a life sentence for somebody of that age? How could the judge not know? I believe the judge knew and intended to give a life sentence. The initial recommendation by probation was for 35 years. But you were saying that he didn't consider it. And I'm just saying how could he not know it and consider it? I mean— I appreciate the point, Your Honor. My argument is that he should have considered it, and it shows that he went overboard beyond what a life sentence would be. So it's the sentence. It's not that he didn't consider it. Yes. It's the fact that it was a life sentence, not the fact that he didn't consider it. Correct. And that if he had considered life expectancy, he would have given a more reasonable sentence that didn't go to the outer limits of reasonableness, which this one did. There is an expert report in the record by Dr. Bardet who indicated that Mr. Valerio has now come to realize the errors of his ways. He's showing remorse. Bardet's report, did that include the—did he include the events with those three and four? No. However, the point that Dr. Bardet made, which is that Mr. Valerio was of moderate risk to reoffend at this time, at the time of his sentence, not in the future, after sex offender treatment, but at the time that he gave his opinion, was that he could be treated and that he could get the benefit of treatment. But again, as Judge Sack points out, that opinion was given without the benefit of the additional facts that were made available through the pre-sentence report and the addendum, correct? That is correct. And Dr. Bardet did say that if those facts were made known to him, it might have changed his opinion. Thank you. I think we have the argument. You have two minutes of rebuttal. We'll hear from the government. Thank you. May it please the Court. My name is Alan Boddy. I'm an assistant United States attorney in the Eastern District of New York. I'll start with the substantive reasonableness, since that's kind of where we left off here. Judge Bianco clearly considered and said that he believed this to be an effective life sentence, which given the amount of work that went into the sentence here, he indicated he'd carefully considered. We had a Fatico hearing where he heard from or he heard a lot about the history and characteristics of Mr. Valerio, some violent rapes. One of the women whom Mr. Valerio in the PSR said he had a good relationship with, Valerio, she'd actually left the country because he had viciously raped her and broke her teeth. Mr. Valerio ---- Just to remind me, that's Doe 3, was that? Pardon? Which Doe was it? That was Ms. A.D., A.D. She was listed in the ---- All right. Okay. By her initials. Mr. Valerio had a very long and violent history and a history of recidivism. At age 39, not a young man, he had the incident at the Splish Splash water park where he groped a woman, tried to penetrate her digitally. While he was on probation for that offense, probation officers found a cache of weapons. They also found pornography, which he was not supposed to have, including pornography, numerous videotapes where he had taped women who didn't know they were being taped. While he was on release, on probation for that Splish Splash attack, in therapy he wrote a letter mocking his victim. He incorporated a business while he was on probation to try and catch more women undressing, is what he admitted to his probation officer in the state. Then the crimes here at approximately ages 46, 47 were very deliberate. He scripted and paid for 46 videos of a 2-year-old being molested by her mother for $12,000 he paid. He had hidden cameras in his house to exploit his 6-year-old niece. And then he lured an au pair here from England, a 19-year-old au pair. He lured her here from England with a phantom child. The crimes for which he's being sentenced are the crimes involving the children. Absolutely, Your Honor. The other conduct informs the judge's view of the other factors, but the crimes for which he's being sentenced are the crimes against the two children. Exactly. And Judge Bianco was very clear that he considered that other evidence for protection of the public based on Valerio's history of recidivism and his violent history. And Judge Bianco specifically found that Valerio's dangerousness would not dissipate over time. He heard from Dr. Bardet, the defense expert. Even Dr. Bardet said that the risk was moderate of reoffense before you even considered all that violent conduct. So Judge Bianco clearly thoughtfully considered all the 353A factors here. I'll turn to the multiplicity argument since Your Honor's talked about that as well. First off, I would note that I don't believe the standard is plain error here. Valerio waived these multiplicity claims. Under United States v. Synnot, Osbay, and Cacase, it's clear that this court has found numerous times in the past where multiplicity is not raised below. It's waived. I would note the defense cites— Waived or forfeited? Waived. Waived. Even if they don't know about it at the time and they just— Do you know why it's considered waived rather than forfeited? Well, let me say, I know now under the current rules, Rule 12 was changed, I think, so it has to be raised pretrial. At this time, that rule is not yet in effect. I would say in a case like Valerio's, the only effect here is special assessments in terms of it will have no effect on his sentence, so the only effect would be special assessments. I know this court has found that that's enough of a reason to consider multiplicity. You cited to us using the term waiver specifically rejected forfeiture. I ask that because, as this Court and the Supreme Court have noted, sometimes the words are used a little quickly without giving thought to whether forfeiture is what's really meant when waiver is employed. Do you have any case that says it's specifically finding waiver, not forfeiture? I don't—I didn't look for that, Judge, so I can't swear to that, but I can say that they rejected plain error in some of those, I believe. All right, so now let's stick with why shouldn't it be forfeiture rather than waiver? Well, I would submit— Usually our cases view waiver as the knowing and deliberate giving up of an argument. That's why when someone asks for a charge and gets it, they won't be heard to complain that that was the charge given. Well, I— In responding, I'm looking at a case called United States v. Polizzi from 2009. Yes. Which seems to consider a double jeopardy claim on plain error review. And so— First time on appeal. Polizzi was my case. I was here on that case. So I actually took a look at my brief at the end of last week. The government never argued waiver in Polizzi. We missed Osbay, obviously, and we conceded that it should be plain error. So I would submit, you know, the government didn't assert it there. Obviously a waiver has to be asserted. And I would note in— You haven't forfeited it here because you didn't raise it there. Well, yes, I would submit the government shouldn't be bound for all time for my mistake in Polizzi and not noticing the Osbay case. I would note Moreno-Montenegro, which the defense cites that the unpublished case citing Polizzi, they were talking about, quote, a narrow exception to the waiver rule when a double jeopardy claim is so apparent on the face of the indictment or on the record existing at the time of the plea.  And specifically in Moreno-Montenegro, that was the problem was on the record as opposed to in the indictment. They said that the defendant did not enter into more than one unlawful agreement. But turning back to Judge Radji's question. Yes, yes. This is really a matter of forethought. So what I would say, Judge Radji, to your question, in this case in particular, if it's not too much of a dodge for me to cite this case, they did make a multiplicity argument as to some of the counts in this case. And Judge Bianco accepted the defense multiplicity argument as to those other counts. So Judge Bianco, I would so clearly I would submit even under a forfeiture analysis, they thought about it and they did. So I think waiver is more appropriate because they clearly spotted issue of multiplicity and didn't think it applied to the other counts that they now raised multiplicity for the first time on appeal. And Judge Bianco is entitled, I submit, to say to himself, well, they're saying multiplicity only as to these counts, and I'm granting them that. I'm assuming there's no multiplicity as to these other counts because they're not interposing that objection here. Dealing with a constitutional concern, right? Yes. Yes. Somewhat different. And to the extent we were to find any merit in the argument, it would mean vacater of one of the counts, right, and then resentencing? Yes. Why would that not be appropriate? Well, first of all — I mean, I'm not saying we would find merit in the claim. I asked Mr. Friedman some questions about it. But if we were to, why wouldn't that be appropriate relief here? Well, one, I submit there is no plain error here. If you'll allow — but obviously if you find it is error, then yes, that's what you would have to do. But I submit that beyond the fact that there's waiver here, there's no plain error. As you pointed out under our argument under Blockberger, that there are different elements. Factually here, that was the case as well, because Count 2 charged did not include mailings. Count 3 included mailings. The child pornography here was sent both via mail and via electronic means. Is that two different crimes? If it's the same — let's assume that it's exactly the same thing, but it's sent by a — via e-mail, via regular mail, and by hand, somebody — Different transportations, then yes. Three different crimes for the same tape. You could. If you made the tape and sent it three different ways, if it's the same tape. In this case, there's 46 different tapes. It's not one. Why wouldn't it be reasonable to be — to infer that Congress was looking for different cases and punishment? Well — To ensure that the action is captured appropriately and punished appropriately. Well, no, I think — I think the reason it was included in the PROTECT Act, as we cited to the legislative history, was to try and capture cases that weren't being captured. But you're arguing that Congress, in effect, was making two separate crimes and for those two different crimes. Yes. And here, the — here, the sentences were concurrent as to these, but obviously there's still a special assessment issue. But the — you know, because the elements vary so — so greatly, I would submit, you know, under 2252 — 2251a, you have to know at the time the child pornography is created, it will be transported. That's not a requirement under 2251c. You intend — the intent is not required at the time the child pornography is created. But let me ask a different question. Just generally, looking at this indictment, I was perplexed by the charges of sexual exploitation of a child from April 1, 2012, through November 1, 2012, on counts 2 and 3, and then attempted sexual exploitation of a child, all with regard to the same child, in counts 9 through 13, identifying certain e-mails sent on various dates. What — what was it in the attempts that wasn't ultimately consummated and — or obtained? And why would — why would an attempt be charged separately in that way? Those — those attempts were — were charged tied to specific e-mails. Those attempts were actually based on the evidence at trial that was presented and the e-mails themselves. Those attempts were — But what made them attempts, as opposed to every correspondence that did the same thing in the period from April 1, 2012, through November 1, 2012, except that the period was identified differently? Could you have started the sexual exploitation of a child in January 2012 and proceeded through November? Well, I think it's a question of unit of prosecution, then, because you — obviously, the government could have bundled them up into — into one count, and between this period and this period did do this. But the — but the unit of prosecution is clear here that — that it's each distinctive attempt. There's no requirement that — that we do that to the defendant's benefit. Wasn't the attempt successful? Yes. So — so each of those e-mails were e-mails that — that resulted in things being And let me say, here, Judge, the practical reason is this little girl, this 2-year-old kept getting molested over a period of time because of these continued actions by the defendant. This wasn't — this was 46 separate videos. So when he's acting — asking for a new video to be made, he's asking for that kid to be molested again, and he was scripting it in detail. So that's, I think, practically why. I still don't understand, if it was successful, why you charge attempt. Oh, as opposed to a completed? I think because it — it was an e-mail, and we're hanging it on the e-mail. I guess it could have been charged as a completed one as well. I agree. Yeah, solicitation of it. Yes. Yes. It could have been as well. I ask just because when you — when you add up all the 30-year sentences that —  60-year sentence looks more within a reasonable range than it might if charging decisions were made otherwise. I see what you're saying. Yes. And all the 30-year sentences were all run concurrently, and then there was a 20-year consecutive for some of the transportation counts and a 10-year consecutive for possession. But the judge — Judge Bianco obviously could have run it as 30 years — one of the 30-year counts for Jane Doe No. 1 and one of the 30-year counts for Jane Doe No. 2 would have made logical sense as well. There's a lot of different ways it could be done, I submit. Unless you have any other questions? Just out of curiosity, what is the status of the mother's case? She has pled guilty. She tried to withdraw her plea. She — Sentence, yes. She's awaiting sentence. She's trying to withdraw her plea again. I was wondering if that — all right. Thank you. Thank you. Thank you very much. We'll hear from Mr. Freeman. You have two minutes of rebuttal. Getting back to my earlier argument regarding the limits — Sir, could you move over by the microphone? Yes, I'm sorry. Getting back to my argument of the outer limits of reasonableness, I was thinking about something that Dr. Bardet said, and I'm also thinking about that this sentence is a sentence that is much greater than necessary. And I think Judge Bianco failed to heed the admonition that sentences — statutory admonition that sentences should not be greater than necessary. Dr. Bardet said that Mr. Valerio did not choose to be victimized or to see his psychosexual development be derailed by a monstrous father. The humanity, in our opinion, was missing from Judge Bianco's sentence. If you have no further questions, I'll sit down. Thank you very much. We'll reserve decision.